(No. 6270— )

KENNETH D. HEADLEE, Claimant, *vs.* STATE OF ILLINOIS, DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Respondent.

*Opinion filed October 3, 1974.*

JOHN J. LAWLESS, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

Claimant seeks to recover the sum of $25,000.00 for damages to a commercial fish pond in an area owned by him in Champaign County, Illinois.

Complaint alleges that by the construction of Route 74 in Champaign County, the natural flow of water was diverted and impeded, and that as a result of said construction, his pond became so silted that it was unusable for the purpose of a commercial fish pond.

Claimant owns approximately 28 acres of land in Champaign County, on which he constructed two fish ponds in 1956. These ponds were fed primarily by springs with some run-off, and in extremely dry weather, well water was used to maintain the level. These two ponds were originally divided and the level of one pond was approximately 30 inches higher than the other.

After the construction of the highway, which was started in 1966, the ditch, which originally flowed from the east side of the highway area, was diverted to the west ditch by a 36 inch culvert under said highway.

It was also alleged in said complaint that the high-

way itself was constructed over some of the springs in the area which had previously flowed into the ponds in question.

The complaint alleges that prior to the existence of the highway, very little silting existed in the pond and the water was pure and clear but that after the highway was constructed, a great deal of sediment had washed into the pond which resulted in the water becoming very shallow.

With the sediment in the water and the change in depth to a comparatively shallow pond, the water, instead of being clear and cool, became impregnated with clay and other silt which would not settle. The temperature of the pond was increased considerably, due to the shallow water; and the quantity of sedimentation became so high that it became untenable for fishing with the result, that the commercial fishing he had carried on for several years in the pond was destroyed.

The claimant alleges that the pond was originally excavated to a depth of between 14 and 16 feet but that because of the highway, there was from 4 to 7 feet of sedimentation accumulated in the pond.

Claimant also alleges, that in the late 1950's and early 1960's when the air temperature was 95° to 100°, the water temperature remained at 65° to 70° but after the silting to said pond, the temperature ran about 75°.

There is a direct conflict in the testimony of the witnesses as to the amount of sediment that accumulated in the pond. The claimant alleges that there was a large amount of sediment and in detailing as to how he arrived at the figures, he stated he used oars, a rake, and a marked fishing pole.

The State used a much more scientific and, undoubt-

edly, a much more accurate method of measuring the sedimentation of the pond and consequently came up with a considerably less amount of sediment than was claimed by Mr. Headlee.

The respondent's measure would indicate that the pond was never over 8 feet in depth, instead of the 16 feet as claimant stated. From the record, it appears that the respondent's method of measuring the depth of the pond and the amount of sediment that accumulated is decidedly more accurate than that of the claimant. Therefore, the claim that there was 7 feet of sediment, must be rejected.

In the Bill of Particulars, claimant asked damages of $37,450.00, with the foremost item in the Bill being a request for removal of 40,000 cubic yards of silt at 75¢ per cubic yard at a cost of $30,000.00.

The respondent's witness testified that 40,000 cubic yards of dirt on 2.7 acres would be in excess of 10 feet in depth, and had 40,000 cubic yards eroded during the construction, the embankment would have lowered 2 feet in depth of soil for a distance of 1500 feet in length, and that the sediment would be 2 feet above the water level.

It appears that these ponds were relatively shallow to begin with, that they did suffer some sedimentation prior to the construction of I-74, and that claimant did suffer the following damages: Sedimentation, causing a change in depth of the water; a change in the type of water from clear, cool water to one with a much higher temperature and carrying a greater degree of sedimentation; and a change in the temperature of the water because of the shallowness of the pond.

The Department of Conservation, in their booklet entitled *POND FISH AND FISHING IN ILLINOIS,* Page

38, in speaking of pond problems calls attention to the fact that where there is considerable soil erosion from clay particles, problems will arise, and it further states:

"The clay suspensions require a special approach, for they are composed of very fine particles which have similar electrical charges and therefore repel each other and do not settle."

This is evidently what has happened in this particular pond. As a result of the change in temperature and the change in the type of water, fish were unable to live.

It is apparent there was a permanent loss of spring water as a result of the construction, so unless another source of water is acquired, it is extremely doubtful whether these ponds will ever be of value as far as commercial fishing is concerned. This evidently is a continuing situation resulting in a permanent loss of use for the area for which it was originally built.

The evidence discloses that after the road was put through, it was necessary to remove the dam between Pond No. 1 and Pond No. 2, which was done at a cost of $1,950.00.

The record shows that in 1965, claimant took in from $4,000.00 to $5,000.00 in receipts from individuals who paid to fish in his ponds; and this income dropped to $2,100.00 in 1971, due, claimant alleges, to the condition of the water and poor fishing resulting from high temperatures and silted water.

It would be impossible, of course, to restore the premises to the way they were originally.

Although the claimant is entitled to the benefit of the rule of law, "that valuation should be adopted, which will be most beneficial to the injured party, as he is entitled to the benefit of his premises intact," *Richards*

vs. *Gundlach*, 245 Ill. App. 264, 267, no measure of damages can be applied, which would give him a profit from damages suffered.

Certain Illinois cases hold that the rule to apply in a case of this type is to permit the measure of damages to be the cost of the restoration, if such can be done readily and at a relatively modest expense. *Clark* vs. *Public Service Co.*, 278 Ill. App. 426, 447, and cases sited therein; *Cooper* vs. *Kankakee Elec. Light Co.*, 164 Ill. App. 581, 586, and 21 C.C.R., Page 281.

The rule that applies when the cost of restoration exceeds the value of the property, the value of the property becomes the ceiling on the amount of damages recoverable, especially when the property is old. *McCormick on Damages, (Hornbook Series)* 1935, Sec. 126, pp. 482-484.

In the present case, restoration of the premises would be impossible and the cost of restoring them would undoubtedly be more than the property is worth.

The rule regarding proof is that the burden of proving the element of damages is upon the claimant. "The proof required to establish damages must not be remote, speculative nor uncertain." *Frega* vs. *State of Illinois*, 22 C.C.R. 399, 400.

The only evidence regarding the permanent damage, was a real estate agent who testified that in his opinion the property was worth $25,000.00 before the road was put in, and was worth $9,000.00 afterwards, a difference of $16,000.00.

It is clear, that claimant is entitled to the sum of $1,950.00 for the bulldozing to take out the dam; and it is also clear, that there is approximately 1,800 yards of dirt to be removed at 75¢ per yard, or $1,350.00.

It is also the opinion of this Court, that claimant suffered $3,000.00 permanent damages from loss of revenue from his ponds and for permanent injuries.

An award, therefore, is made to claimant in the amount of $6,300.00.